**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| NDUBUISI IBETTO, <br> CHRISTY IBETTO | § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. H-14-3047 |
| JPMORGAN CHASE BANK, N.A., | § <br> § <br> § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This case challenges a mortgage foreclosure. The plaintiffs sued JPMorgan Chase ("JPMorgan") in Texas state court, seeking to prevent the foreclosure of their home. JPMorgan removed to federal court on the basis of diversity jurisdiction, then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Docket Entry No. 4). The plaintiffs have not responded to JPMorgan's motion to dismiss. Based on the pleadings, the motion, and the applicable law, the court grants the motion and dismisses this case by separate order. The reasons are stated below.

**I.     The Plaintiff's Allegations**

Ndubuisi and Christy Ibetto took out a mortgage in 1999 to purchase residential property located at 3806 Westall Lane, Missouri City, Fort Bend County, Texas 77459. They made payments for over ten years. In January 2011, after JPMorgan increased the monthly mortgage payments from $2,294.15 to $2,800.00, the Ibettos stopped making payments (allegedly in reliance on the advice of JPMorgan's employees) in the hope of negotiating a loan modification. (Docket Entry No. 1-2, at 11). JPMorgan orally offered to modify the loan on two occasions, but the Ibettos refused because

they did not want to extend the loan and thought that the monthly payment was still too high. (*Id.* at 12-13). They made three monthly payments during a "trial period" but stopped paying the amounts due after rejecting JPMorgan's second modification offer. (*Id.* at 13-14). The Ibettos "received a letter from [JPMorgan's] counsel claiming that [JPMorgan] had decided to accelerate the underlying loan on [their] property," and they were informed that foreclosure would occur on October 7, 2014. (*Id.* at 15).

On October 2, 2014, the Ibettos sued JPMorgan in state court, seeking a temporary restraining order preventing the defendants from foreclosing, as well as damages and injunctive relief. (Docket Entry No. 1-2, at 6). The petition asserted causes of action for breach of contract, negligence, fraud, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and breach of the covenant of good faith and fair dealing. (Docket Entry No. 1-2, at 9-27).

The state court granted the TRO. (Docket Entry No. 1-3). JPMorgan timely removed. (Docket Entry No. 1). One week later, JPMorgan moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, (Docket Entry No. 4). No response has been filed.

## II. The Applicable Legal Standards

### A. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."

2

*Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). The Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677.

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint . . . courts may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996). A court may, however, "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001). The court may consider such extrinsic materials as matters of public record without converting the motion into one seeking summary judgment.

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Federal Rule of Civil Procedure 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also* FED. R. CIV. P. 15(a).

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other condition of mind of a person may be alleged generally." *Id.*

3

Although the particularity Rule 9(b) demands differs with each case, "a plaintiff pleading fraud must set forth the who, what, when, and where before access to the discovery process is granted. Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (quotations and citations omitted); *accord United States ex rel. Steury v. Cardinal Health, Inc. (Steury II)*, 735 F.3d 202, 204 (5th Cir. 2013).

## III.     Analysis

### A.     The Claim for Breach-of-Contract

The Ibettos allege that JPMorgan breached the loan agreement by accelerating the loan even though they made their required payments. Under Texas law, the elements of a breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). A plaintiff must identify both the contract and the provisions the defendant allegedly violated. *See Blakeley v. Boltinghouse*, No. 03-cv-4901, 2005 WL 1185944, at *5 (S.D. Tex. May 4, 2005).

The Ibettos fail to cite any specific provision of the contract that was violated. It is undisputed that the Ibettos stopped making loan payments between January 2011 and May 2014. (Docket Entry No. 1-2 at 14). Performance or tender of performance is an essential element of a breach of contract claim. *See Mullins*, 564 F.3d at 418. Because the Ibettos have not performed or tendered performance of their contract obligations, they cannot establish an essential element of their

4

cause of action. Their failure to perform is fatal to their breach of contract claim. Because amendment would be futile, this claim is dismissed with prejudice.

### B. The Negligence Claim

The Ibettos also allege that JPMorgan acted negligently by raising their mortgage payments, making fraudulent statements, and breaching the alleged oral modifications. "Generally, under Texas law, a plaintiff may not recover in tort for claims arising out of an unenforceable contract under the statute of frauds." *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 584 (N.D. Tex. 2013) (citing *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 470 (5th Cir. 2002); *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001)). To the extent that the breach of contract claim is based on JPMorgan's alleged oral promise to modify the loan, it is, like the fraud claim discussed below, barred by the statute of frauds. *See Kiper v. BAC Home Loans Servicing, L.P.*, 884 F. Supp. 2d 561, 571 (S.D. Tex. 2012), *aff'd*, 534 F. App'x 266 (5th Cir. 2013) ("[E]ven if the bank orally did promise and approve a loan modification to Kiper, the statute of frauds would preclude recovery on his claim.").

The negligence claims are deficient on another basis as well. To state a negligence claim under Texas law, a plaintiff must allege: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). The "Negligence" section of the Ibetto's petition lists these elements but as a formulaic recitation that is insufficient to state a claim. *Iqbal*, 129 S.Ct. at 1949 (citation omitted). Their allegations do not support any inference that JPMorgan owed a legal duty to the Ibettos that it breached. Under Texas law, "there is no special relationship between a mortgagor and mortgagee that would give rise to a stand-alone duty of good faith and fair dealing." *Milton v. U.S. Bank Nat.*

5

*Ass'n*, 508 F. App'x 326, 329 (5th Cir. 2013) (rejecting negligence claim); *see also Burnette v. Wells Fargo Bank, N.A.*, No. 4:09–CV–370, 2010 WL 1026968, at *8 (E.D. Tex. Feb. 16, 2010) (dismissing negligence claim on this ground). This claim is dismissed, with prejudice, because amendment would be futile.

    **C.**    **The Fraud Claim**

The Ibettos allege that JPMorgan committed fraud when it orally promised to modify the loan agreement and forego the right to foreclose after they defaulted. The Texas statute of frauds makes an unwritten agreement for a loan in excess of $50,000 unenforceable. Tex. Bus. & Comm. Code § 26.02(b) ("A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."). An agreement to modify such a loan, including an agreement to forego the right to foreclose, must also satisfy the statute of frauds. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013); *Gordon v. JPMorgan Chase Bank, N.A.*, 505 F. App'x 361, 366 (5th Cir. 2013). This includes an oral agreement to forego the right to foreclose. *Martins*, 722 F.3d at 256.

The loan's principal amount, $240,000, makes the statute of frauds apply to any agreements to modify. (*See* Docket Entry No. 1-2, at 29). The Ibettos do not allege any written agreement allowing them to stop making payments while applying for a loan modification, or prohibiting JPMorgan from foreclosing. The fraud claims are barred by the statute of frauds. *See Kiper*, 884 F. Supp. 2d at 573 (dismissing a similar fraud claim because "the statute of frauds and parol evidence rule require such promises to be written to be enforceable").

The Ibettos also fail to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that plaintiffs "state[] with particularity" the "circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s heightened standard, plaintiffs must plead with "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). The Ibettos fail to identify the time, place, identity of the speaker, or what benefit the speaker gained from the alleged misrepresentation. Their complaint does not meet the Rule 9(b) standard.

Finally, any reliance on the statements allegedly made by JPMorgan employees—a necessary element for a successful fraud claim—was not justifiable as a matter of law. *See TMI, Inc. v. Brooks*, 225 S.W.3d 783, 795 (Tex. App.–Houston [14th Dist.], 2007, pet. denied) ("[O]ne of the elements of a fraud claim is that the plaintiff actually and *justifiably* relied on the misrepresentation."). The loan agreement clearly stated that any modifications needed to be made in writing. (*See* Docket Entry No. 1-2, at 30 (providing that the "written loan agreement" "may not be contradicted by evidence of prior, contemporaneous, or *subsequent oral agreements of the parties*" (capitalization removed) (emphasis added)). The plaintiffs' fraud claim is based on general allegations of the defendant's oral representations that contradicted the loan agreement. In *Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326 (5th Cir. 2013), the Fifth Circuit affirmed the district court's dismissal of a fraud claim because the borrower's "reliance on oral representations by customer service representatives that were contradicted by the terms of the loan agreement and the notice of foreclosure was not reasonable as a matter of law." *Id.* at 330 (citing *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 795 (Tex. App.–Houston [14th Dist.], 2007, pet. denied)). As in *Milton*, the

plaintiffs' reliance on the alleged modification was not reasonable as a matter of law. Because amendment would be futile, this claim is dismissed with prejudice.

> **D.** **The Deceptive Trade Practices Act Claim**

The Deceptive Trade Practices Act ("DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a). The plaintiffs allege a violation of the DTPA based on the same allegedly fraudulent misrepresentations that support their common-law fraud claim. Because Federal Rule of Civil Procedure "9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not," it applies to statutory claims based on allegations of fraud. *Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). "Claims alleging violations of . . . the Deceptive Trade Practices Act . . . are subject to the requirements of Rule 9(b)." *Kiper*, 884 F. Supp. 2d at 569. The Ibettos have failed to meet this heightened standard. They fail to state a claim under the DTPA.

The Ibettos also lack standing to assert a DTPA claim. The DTPA allows suits by "consumers." *See Miller v. BAC Home Servicing, L.P.*, 726 F.3d 717, 724 (5th Cir. 2013) ("The DTPA protects consumers; therefore, consumer status is an essential element of a DTPA cause of action." (quotation omitted)). To qualify as a consumer, a plaintiff must first seek or acquire "goods or services" by purchase or lease, and the goods or services must form the basis of the complaint. *Id.* at 724-25; *see also* Tex. Bus. & Com. Code § 17.45(4) (defining "consumer" in part as "an individual . . . who seeks or acquires by purchase or lease, any goods or services"). A borrower is not a consumer with respect to claims related to attempted foreclosure of a mortgage loan. *Fowler v. U.S. Bank, Nat. Ass'n*, 2 F. Supp. 3d 965, 974-75 (S.D. Tex. 2014). "Because the basis of Plaintiffs' claim is subsequent loan servicing and foreclosure activities, rather than the goods or

services acquired in the original loan transaction, Plaintiffs are not consumers under the DTPA with regard to this claim." *Id.* at 974.

The Ibettos do not complain about the original loan transaction. Instead, they base their complaint on subsequent loan servicing and foreclosure activities. They are not consumers under the DTPA. This claim is dismissed with prejudice because amendment would be futile.

**E.     The Claim for Breach of the Covenant of Good Faith and Fair Dealing**

The plaintiffs allege that JPMorgan breached an implied duty to deal in good faith. Texas does not recognize an implied covenant of good faith and fair dealing in all contracts. *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex. 1994). Certain fiduciary relationships may give rise to such a duty regardless of contract language. *See O'Bryant*, 18 S.W.3d at 215 ("[T]his Court has imposed an actionable duty of good faith and fair dealing only when there is a special relationship, such as that between an insured and his or her insurance carrier."). But Texas courts have refused to recognize such a special relationship in the context of lending and borrowing. *See Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 726-27 (Tex. App. –El Paso 2011, no pet.) (citing *UMLIC VP LLC v. T&M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App. –Corpus Christi 2005, pet. denied) (finding no special relationship to support duty of good faith and fair dealing between borrower and lender)); *see also Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1004 (S.D. Tex. 2011) (same).

The mortgage contract does not expressly oblige either party to satisfy the duty of good faith and fair dealing. Nor have the Ibettos alleged a special relationship that would give rise to a duty of good faith and fair dealing. They allege only that JPMorgan is their lender and mortgagee, which Texas courts have held is insufficient as a matter of law to create such a duty. *See UMLIC VP LLC*,

9

176 S.W.3d at 612 ("Texas courts have found no special relationship between a mortgagor and a mortgagee, or between a creditor and a guarantor, that would impose an independent common law duty of good faith and fair dealing."). This claim is dismissed, with prejudice, because amendment would be futile.

### F. The Claim for Injunctive Relief

Under Texas law, a request for injunctive relief fails to state a claim in the absence of a cause of action supporting entry of a judgment. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002). Because the Ibettos have failed to state substantive claims, their request for injunctive relief also fails.

## IV. Conclusion

The complaint fails to state a claim on which relief may be granted. The court grants JPMorgan's motion to dismiss, (Docket Entry No. 4). This action is dismissed, with prejudice. An order of dismissal is separately issued.

SIGNED on December 11, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge